## BENJAMIN F. ALMY *vs.* WILLIAM W. CRAPO & another, administrators.

The Gen. Sts. *c.* 98, § 8, do not make an executor or administrator liable for the use or occupation of real estate for which he would not be liable otherwise.

An executor or administrator who has an interest as heir, devisee, or otherwise, that entitles him to possession of real estate of the deceased, which he occupies without any arrangement with other parties interested therein, is not liable to account for income of such real estate by reason of such occupation.

An administratrix of the estate of her intestate husband continued, for five years after his death, to occupy, without objection from any of his seven heirs, part of the time jointly with three of them who were adults, and two who were minors of whom she was guardian, and the rest of the time jointly with the two minors and one of the adults, real estate of which her husband was seised when he died and in which she was entitled to dower. *Held*, that she was not liable to account for the income of the real estate during the period of such occupation.

APPEAL from a decree of the judge of probate on July 18, 1866, allowing an account of William W. Crapo and Emily M. Almy as administrators of the estate of Benjamin R. Almy, the deceased husband of said Emily, and overruling a motion of the appellant, one of the heirs of the deceased, for the appointment of three disinterested persons to determine, under the Gen. Sts. *c.* 98, § 8,* a sum which the administrators should allow for the use and occupation by said Emily, since the death of her husband, of a dwelling-house and land owned and occupied by him when he died; heard by *Colt*, J., and reserved for the determination of the full court on facts agreed in substance as follows :

Benjamin R. Almy died January 29, 1861, intestate; his widow and Crapo were duly appointed administrators of his estate, on February 5, 1861; he left seven children, two of them minors of whom the widow was guardian ; and at the time of his death he owned and occupied as a homestead real estate appraised in the inventory at the value of $22,500. Ever since the death of the intestate, the widow, " together with the minor children and one of the other heirs, with the assent of all the heirs continued to occupy the homestead estate above described," and " two other heirs, daughters of the intestate, occupied said homestead estate with them, sharing the expenses of the household establishment for about two years subsequently to his death." The deceased left other real estate, about which there was no controversy ; and his personal property was more than sufficient to pay all his debts and the charges of administration. Nothing was ever done to assign and set off the widow's interest by way of dower or homestead in the real estate so occupied by her ; nor to make partition among the heirs. She occupied

---

* " If the real estate has been used or occupied by the executor or administrator, he shall account for the income thereof, as ordered by the probate court with the assent of the executor or administrator and of such other parties interested as are present at the rendering of the account. If the parties do not agree on the sum to be allowed, it shall be determined by three disinterested persons to be appointed by the probate court, whose award being accepted by the court shall be final."

and used it with the knowledge of Crapo ; but Crapo himself never exercised or sought to exercise any direction or contro' over it. The administrators were duly cited and ordered to present their account in the probate court in April 1866, and thereupon presented the account at issue, and omitted to make any credit therein to the estate of the deceased on account of such use and occupation of part of his real estate by one of them.

*G. D. Noyes,* for the appellant.

*W. W. Crapo,* for the administrators.

WELLS, J. The Gen. Sts. *c.* 98, § 8, do not make an executor or administrator liable for the use and occupation of real estate for which he would not otherwise be liable in some form. The purpose of that section is to provide a mode for determining the amount and disposition of what may be due for the use or income of real estate, when the occupation is such as to create a liability therefor.

It is no part of the duty of administrators to take charge of the real estate ; and, whether they do so or not, creditors are not entitled to require them to account for the income. *Gibson* v. *Farley,* 16 Mass. 280. *Newcomb* v. *Stebbins,* 9 Met. 540. An executor or administrator may occupy or receive the income of real estate, by request of the heirs, or with their acquiescence. It is often convenient that he should do so, pending the settlement of the estate and until partition can be made; especially while there remains any uncertainty whether its sale will be required for payment of debts. The statute in question provides a ready mode, in such cases, for the adjustment of his accounts with the heirs or devisees. If he does not avail himself of this mode, the heirs may, if they choose, sue him as their bailiff, at common law. *Gibson* v. *Farley,* 16 Mass. 280. When however the executor or administrator has an interest as heir, devisee or otherwise, which entitles him to possession, and there is no arrangement with other parties interested, and no ground upon which to charge him for rents except the fact that he is also executor or administrator, he will be presumed to have entered by virtue of his legal right, as being most for his advan-

tage; and, if that right will justify his occupation without liability to account for income, he cannot be required to account by force of the statute only. *Newcomb* v. *Stebbins,* 9 Met. 540. *Palmer* v. *Palmer,* 13 Gray, 326.

In *Stearns* v. *Stearns,* 1 Pick. 157, the administrators were required to account, notwithstanding their claim that they occupied as heirs and not as administrators. But that decision was put explicitly upon the ground that they had voluntarily rendered a return of income of the real estate in their first account, with the assent of the other heirs, and had continued afterwards to occupy without notice of any change; thus giving the heirs a right to consider that they were holding upon the same terms as before.

In this case the widow, being also one of the administrators, has occupied the homestead estate since the decease of her husband in 1861. Her occupation has not been exclusive, but joint with two minor heirs of whom she is the guardian, and one adult heir; and for a part of the time with two others of the seven heirs. The others have not been excluded, and do not appear to have ever demanded to be admitted to share in the occupation. No arrangement appears to have been made for the occupation of the land by the administrators, or with either of them as administrator. By the " assent of all the heirs," mentioned in the statement of facts, we do not understand that anything more is intended than the assent contemplated by the Gen. Sts. *c.* 90, § 7.\* The occupation of the widow is justified, not only by her legal rights as widow, but also as guardian of the minor heirs. And that it was not for any purpose of being held to account for the use is indicated strongly by the fact that it was shared by some of the adult heirs. One tenant in com-

---

\* " When a widow is entitled to dower in lands of which her husband died seised, she may continue to occupy the same with the children or other heirs of the deceased, or to receive one third part of the rents, issues or profits thereof, so long as the heirs do not object thereto, without having her dower assigned; and whenever the heirs or any of them deem it proper to hold or occupy their share in severalty, the widow may claim her dower and shall have the same assigned to her according to law."

mon thus occupying the common property is not liable to account for the use to his cotenant. *Sargent* v. *Parsons*, 12 Mass. 149. The decree of the probate court, refusing to appoint commissioners, and allowing the account of the administrators, is therefore affirmed.