SMITH et al. v. BELDING et al.
(No. 290—3547.)

(Commission of Appeals of Texas, Section A.
Feb. 8, 1922.)

1. Executors and administrators ⊜⇒501—Statute held to authorize administrator to retain commissions without payment into court.

Vernon's Sayles' Ann. Civ. St. 1914, art. 3621, allowing executors and administrators a 5 per cent. commission, allows the administrator to retain his commission in his hands, and does not require that he pay it into the treasury of the court, and then have the court order it repaid to him on his application.

2. Executors and administrators ⊜⇒537(11)—Sureties on administrator's bond held entitled to deceased administrator's commissions.

In action on an administrator's bond, where plaintiffs were awarded full judgment for a shortage in the administrator's accounts, he having died without making settlement, held that the sureties were properly allowed the commissions due him under Vernon's Sayles' Ann. Civ. St. 1914, art. 3621.

3. Appeal and error ⊜⇒1151(3)—Appellate courts held not entitled to disturb allowances on account of deceased administrator.

In an action on the bond of a deceased administrator, where the jury on submitted question as to how much was paid out by administrator as claims had ascertained and allowed certain items of credit on his account, and judgment had been rendered accordingly, it was beyond the power of the Court of Civil Appeals to add to the items so found, since to do so would constitute an invasion of the province of the jury.

4. Executors and administrators ⊜⇒537(11)—Simple interest held properly allowed on balance due from deceased administrator from his death.

In an action on the bond of a deceased administrator against whom a shortage was found, simple interest was properly allowable on the balance found owing to the plaintiffs from the date of the death of the administrator.

Error to Court of Civil Appeals of Ninth Supreme Judicial District.

Action by Mrs. Abie Belding and others against W. A. Smith and others.   From a judgment for plaintiffs, defendants appealed to the Court of Civil Appeals, which rendered judgment (224 S. W. 562), and both parties bring error.   Judgment of the Court of Civil Appeals reversed, and judgment of the district court reformed and affirmed according to the recommendation of the Commission of Appeals.

Elliott Cage, of Houston, for plaintiffs in error.

A. B. Wilson, of Houston, for defendants in error.

RANDOLPH, J.   Mrs. Abie Belding et al., as the heirs of Dwight Belding, deceased, brought suit in the district court of Harris county (and will hereinafter be styled plaintiffs) against H. Masterson and W. A. Smith (who will be hereinafter called defendants).

From an adverse judgment in that court the defendants took the case to the Court of Civil Appeals for the First District, and the case was transferred to the Court of Civil Appeals for the Ninth District.   That court having rendered a judgment (224 S. W. 562), which was not satisfactory to either party, both parties applied to the Supreme Court for a writ of error, and the case is now before us for consideration.

James R. Masterson was appointed administrator for the estate of Dwight Belding, deceased, by the county court of Harris county, and he gave bond as such administrator with defendants Masterson and Smith as sureties on September 19, 1911.   The required inventory and appraisement was filed by him as such administrator, and on March 4, 1914, without having had any final settlement of the estate matters, James R. Masterson was killed in an automobile accident.   Thereafter defendant H. Masterson was appointed administrator de bonis non, and later made a settlement as to his connection with the estate, about which last settlement there is no question before the Supreme Court.

The sole question presented to the Supreme Court in the application of defendants for writ of error is, "The Court of Civil Appeals erred in refusing to allow commission due James R. Masterson."

The jury found that James R. Masterson collected as administrator $15,023.32, and that he paid out on claims against the estate $3,689.68.

Article 3621, chapter 31, Vernon's Civil Statutes 1920, provides:

"Executors and administrators shall be entitled to receive and may retain in their hands 5 per cent. on all sums they may actually receive in cash, and the same per cent. on all sums they may pay away in cash in the course of their administration."

[1] This statutory provision allows the administrator to retain his commissions in his hands, and clearly does not require that he

pay it into the treasury of the court and then have the court order it repaid to him on his application. This being true, on the finding of the jury he is entitled to a credit not allowed by the Court of Civil Appeals for the sum of $943.35.

Judge Neill of the Court of Civil Appeals for the Fourth District, in the case of Chapman v. Brite, 4 Tex. Civ. App. 506, 23 S. W. 514, in an opinion which we here approve in its bearing on the question here in issue, says:

"In view of the disposition this court will make of this appeal we deem it proper to suggest for the guidance of the district court on its trial of the issue for which it will be remanded, that it has been frequently held . by courts of other states that compensation should be refused an administrator if he has been guilty of willful default or gross negligence in the management of the estate whereby it has suffered loss. Brooks v. Jackson, 125 Mass. 307; Clausers Estate, 84 Pa. St. 51–54; Smith v. Kennard, 38 Ala. 695. 'The principle upon which compensation is refused is that, where an estate has suffered loss by the dereliction of the administrator, the loss will not be enhanced by the allowance of commissions. But when the loss arising out of misconduct is made up to the estate, so that the beneficiaries get the full benefit of a vigorous and efficient administration, it is neither just nor logical that a bonus should be granted to them in the shape of commissions denied the administrator, thus increasing the burden which, in such ,cases, usually falls upon the delinquent's sureties. To the extent to which the estate has been properly administered, and on the amounts which he or his sureties pay or make up for the losses by devastavit or maladministration, the administrator should be allowed such commissions as the statute provides. 2 Woerner, Adm'r, § 526.' "

[2] In view of our recommendation under which the plaintiffs are awarded full judgment for the shortage, it is only proper that the sureties on James R. Masterson's bond be allowed the commission due him. Especially do we feel that this is due them because James R. Masterson was not properly charged with failure to make settlement, and, he having been suddenly withdrawn from his duties as such administrator by death, it would be gross injustice to penalize his sureties for conduct which might have been fully explained, or for his failure to settle that which might not have occurred if he had lived.

This is true even though defendants did not plead same as an offset to plaintiffs' demand, for the reason that plaintiffs in their pleading and by their proof were seeking a recovery of an amount pleaded as an absolute shortage, and were entitled to recover only such sum as they showed that the administrator was not entitled to retain. When they established the amount received and the amount paid out by the administrator they limited their recovery thereby, and the statute automatically fixed the status of the funds in his hands by allowing him to deduct from the corpus of such funds his 5 per cent. commission.

The plaintiffs assign error in the Supreme Court on the action of the Court of Civil Appeals in allowing as credits to defendants the following sums claimed to have been paid out by the administrator:

$18.60 paid to the clerk of the Court of Civil Appeals, Galveston, by check dated August 17, 1912.

$346 paid to George M. Hermann by check dated March 4, 1912.

$5.75 paid to the clerk of the Court of Civil Appeals of Galveston by check dated August 23, 1912.

$5.05 paid to the clerk of the Court of Civil Appeals as costs in the case of Steele v. Belding September 2, 1912.

$100 paid to Presley K. Ewing as fee in representing the Beldings from the Court of Civil Appeals in the case of Steele v. Belding by check dated March 22, 1912.

$6.35 paid to the clerk of the Court of Civil Appeals July 17, 1912.

$31 paid to Gray, Dillaye & Co. for briefs in the case of Steele v. Belding heirs by check dated November 9, 1911.

$403.99 additional amount paid to H. Masterson on claims against Belding estate, amount as shown by inventory paid by check dated March 15, 1912.

It does not appear from the record that the trial court failed or refused to allow these items as a credit, but on appeal the Court of Civil Appeals rendered judgment for defendants. These items were offered and admitted in the lower court without any objection from plaintiffs. For this reason the Court of Civil Appeals considered the proof as being prima facie evidence that the administrator was entitled to these credits. We cannot agree that the credit should have been allowed him, as was done by the Court of Civil Appeals, in addition to the amounts allowed by the jury. These items were brought before the trial court along with other claims for credit. It appears that they were considered and rejected by the jury. The trial court submitted to the jury the issue:

"What amount of money, if any, did James R. Masterson as administrator of the estate of Dwight Belding, deceased, pay out as claims against said estate?"

[3] To this the jury replied, "$3,843.77." The plaintiffs in their petition admitted that the sum of $3,689.68 had been paid, and, as between the credits so admitted and the amount found by the jury there is a difference of $154.09, we cannot say that certain of the above items were not allowed. However, be that as it may, the jury having ascertained the amount upon consideration of all the evidence upon a general issue, and

the trial court having rendered judgment accordingly, the Court of Civil Appeals erred in adding to the finding of the jury, it not appearing that these items were rejected, and that their rejection presented a question of law for the Court of Civil Appeals to decide, instead of the question of fact which they have decided. We therefore hold that the items so allowed by the Court of Civil Appeals be not·allowed, because same were considered and determined by the jury, and neither the Court of Civil Appeals nor this court have any right to decide questions of fact, and thus to invade the province of the jury.

The plaintiffs also complain of the action of the Court of Civil Appeals in sustaining defendants' fourth assignment of error, and in their holding that interest should not have been charged on the amount claimed against the administrator until demand had been made, and in setting aside the trial court's judgment allowing plaintiffs to recover interest at 6 per cent. per annum from March 4, 1914, to June 1, 1916.

[4] The administrator's duty is to dispose of so much of the estate as is necessary to pay the debts. After he has done this there is no provision for him to do anything with the residue of the estate, except to account for it and close the administration. James R. Masterson was killed on March 4, 1914. At that time it appears that his estate was utterly insolvent, and that he was due the estate of Dwight Belding the sum found by the trial court and jury. The bondsmen made no attempt to pay this balance, but have litigated it continuously from that time, and, as the death of the administrator, James R. Masterson, developed the breach of the obligations contained in the bond, we think that the lower court was right in permitting the plaintiffs to recover interest on the balance found owing to them from the date of the death of the said administrator.

"Where delay in settling an administrator's account after his death is not due to his method of handling the estate or chargeable to his estate, it will be considered settled as of the date of his death, and his estate will be charged with simple interest only on the balance in his hands at the time." Walworth's Estate v. Bartholomew's Estate, 76, Vt. 1, 56 Atl. 101.

In this case, without criticising the method of the handling of the estate by James R. Masterson, and only finding the breach of the bond to exist at the date of his death, the above rule can be and should be followed, and we sustain the trial court in its finding upon the question of allowance of interest.

We therefore recommend that the judgment of the Court of Civil Appeals be reversed, and the judgment of the district court be reformed, and that judgment be rendered for the sum of $5,236.20, that being the amount of the balance found by the trial court to be due and owing by the administrator, James R. Masterson, to the estate of Dwight Belding, deceased, after we have deducted the sum of $943.35 ·commission allowed to said James R. Masterson, together with interest thereon from March 4, 1914, at the rate of 6 per cent. per annum, and all costs of court, and that as thus reformed the judgment of the district court be affirmed.

CURETON, C. J. Judgment of the Court of Civil Appeals reversed, and judgment of the district court reformed, so that defendants in error Mrs. Abie Belding et al., recover of plaintiffs in error W. A. Smith et al., $5,236.20, with interest at the rate of 6 per cent. per annum from March 4, 1914. Costs of trial court taxed against W. A. Smith et al.; costs of Court of Civil Appeals and Supreme Court taxed against Mrs. Abie Belding et al.